IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 13-CR-464 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LUIS RAMOS-GUERRERO | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Luis Ramos-Guerrero ("Defendant") is charged by the United States of America ("Government") with conspiring to possess with intent to distribute and to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count One) and three counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Three, and Four). Before this Court are Defendant's motion to bar hearsay evidence [82] and Defendant's "position paper as to suppression of evidence" [84]. For the reasons explained below, the Court denies Defendant's motion to bar hearsay evidence [82] but directs the parties, by June 3, 2016, to submit a proposed limiting instruction to the Court's proposed order e-mail box, Proposed_Order_Dow@ilnd.uscourts.gov. The Court has also considered the parties' positions concerning the suppression of evidence (see [84], [88], [90]) and provides guidance concerning how the Court's suppression order [69] will affect the presentation of evidence at trial.

**I. Background**

The background of this case is set forth fully in the Court's prior order [69] granting in part and denying in part Defendant's motion to suppress, knowledge of which is assumed here. Briefly stated, the Government received information from a Confidential Source ("CS") identifying Defendant as a cocaine broker who operated out of the garage of his home in

Carpentersville, Illinois. On October 22, 2012, the Government arranged for the CS to make several calls to Defendant to set up a phony drug transaction in Defendant's garage, allegedly involving the sale of 8 kilograms of cocaine for $130,000. Agents of the Drug Enforcement Agency ("DEA") were conducting surveillance of Defendant's home. When a person believed by the agents to be the targeted buyer, Alfonso Last Name Unknown ("LNU"), arrived, DEA agents converged on the two suspects and explained they were conducting a drug investigation. Agents patted down the two suspects and handcuffed Defendant.[1] Defendant gave verbal consent to search his home and told agents that there was money in his garage. Agents removed the handcuffs from Defendant after about ten minutes. After Defendant was un-cuffed, agents searched his home and garage and DEA Special Agent Anglada retrieved $36,000 in cash from a toolbox in the garage. Anglada showed the money to Defendant, who told Anglada that the money was from the sale of a restaurant and that he was hiding it from his wife. In his conversation with Anglada, Defendant also confirmed that he had participated in at least two five-kilogram cocaine transactions in his garage with the Government's CS and Alfonso LNU.

On December 5, 2012, Agents Anglada and Dickey went to Defendant's home at Defendant's invitation. Defendant asked the agents to come to his home to discuss a Notice of Seizure letter ("Seizure Notice") that he had received from the DEA concerning the $36,000. The agents advised Defendant to hire an attorney and to include receipts with any claim he filed regarding the seized funds. After discussing the letter, the agents began questioning Defendant about Alfonso LNU and the various cocaine transactions between Defendant, the CS, and Alfonso LNU. Defendant made essentially the same incriminating statements that he made on October 22, 2012 regarding his brokering of two drug transactions between the CS and Alfonso LNU.

---

[1] As it turns out, the individual who arrived at the house was not Alfonso LNU.

On June 5, 2013, DEA agents executed an arrest warrant against Defendant and read him his Miranda rights. Defendant stated that he understood his rights and was willing to waive them. In the ensuing conversations, Defendant reiterated the same incriminating statements that he made on October 22 and December 5, 2012.

Defendant filed a motion to suppress the $36,000 that was seized from his garage and the incriminating statements that he made to agents on October 22 and December 5, 2012 and June 5, 2013 about his involvement as a broker of several cocaine transactions. See [32]. The Court denied Defendant's motion regarding the incriminating statements that he made to agents but granted the motion regarding the seized $36,000.

Defendant now moves *in limine* to bar the introduction at trial of DEA agents' testimony concerning statements that the CI made to them about Defendant and the charges at issue in this case. See [82]. Defendant also seeks clarification concerning how the Court's ruling on the suppression of the $36,000 will constrain the Government in its presentation of evidence at trial. See [84].

## II. Legal Standard

"Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). The party seeking to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009); see also *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997). As the trial progresses, the Court "remains free to alter earlier rulings" on motions *in limine*. *Perry*, 733 F.3d at 252; see also *Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing

unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

## III. Analysis

### A. Defendant's Motion *In Limine* to Bar Hearsay Evidence

Defendant's motion *in limine* seeks to bar certain testimony by DEA agents on the basis that the testimony would constitute inadmissible hearsay. Hearsay is "a statement," other than one made by the declarant "while testifying at the current trial or hearing," offered "in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Whether a particular statement is hearsay 'will most often hinge on the purpose for which it is offered.'" *United States v. Cruse*, 805 F.3d 795, 810 (7th Cir. 2015) (quoting *United States v. Linwood,* 142 F.3d 418, 425 (7th Cir. 1998)). If a statement constitutes hearsay, then it is inadmissible at trial unless an exception to the hearsay rule applies. Fed. R. Evid. 802. In addition, to ensure parties the benefit of cross-examination, the Sixth Amendment to the U.S. Constitution "bars the admission of 'testimonial hearsay' against a criminal defendant unless (1) the declarant is unavailable at trial; and (2) the defendant had a prior opportunity to cross-examine that declarant." *Jones v. Basinger*, 635 F.3d 1030, 1041 (7th Cir. 2011). The Sixth Amendment "does not bar out-of-court statements when the statement is not offered to prove the truth of the matter asserted." *United States v. James*, 487 F.3d 518, 525 (7th Cir. 2007). Therefore, "[w]hen out-of-court statements are not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person repeating the out-of-court statement," *id.*, "[a]bsent 'complicating circumstances,' such as a prosecutor who exploits nonhearsay statements for their truth," *United States v. Taylor*, 569 F.3d 742, 750 (7th Cir. 2009).

The Seventh Circuit has "'recognized repeatedly that statements offered to establish the course of the investigation, rather than to prove the truth of the matter asserted, are nonhearsay and therefore admissible.'" *Cruse*, 805 F.3d at 810 (quoting *Taylor,* 569 F.3d at 749 (internal quotation marks omitted)). It has cautioned, however, that "the 'course of investigation' gambit is so often abused and/or misunderstood that it is an evidentiary and constitutional minefield" that can create "a substantial risk of violating both the hearsay rules of evidence and the Confrontation Clause rights of the defendant under the Sixth Amendment." *Carter v. Douma*, 796 F.3d 726, 736 (7th Cir. 2015). Therefore, "[b]oth defense counsel and trial judges need to be on high alert when the prosecution offers what sounds like hearsay to explain 'the course of the investigation.'" *Id.* "[T]he 'course of investigation' exception is most readily applied to admit only those brief out-of-court statements that bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury." *Jones*, 635 F.3d at 1046.

In this case, Defendant "objects to hearsay evidence that the government may attempt to elicit from law enforcement regarding statements that the C/I allegedly made regarding [Defendant] and the charges at issue." [82] at 1. Defendant asserts that any statements—short of the actual recordings of conversations between the CI and Defendant—"would be offered for the truth of the matter asserted and violate the rule against hearsay as well as the Confrontation Clause of the Sixth Amendment to the United States Constitution." *Id.* Defendant concedes, however, that "[u]nder existing Seventh Circuit case law the C/I's statements may be admitted to put the alleged statements of Ramos-Guerrero in context but not for their truth." *Id.* at 1, n.1.

In response, the Government recognizes that hearsay is inadmissible but argues that it seeks to elicit only non-hearsay testimony from law enforcement to explain: "(1) how authorities were put on notice of the defendant's telephone number and location; (2) the recorded telephone

call between the CI and the defendant on October 17, 2012; (3) the subsequent sequence of telephone calls between the CI and the defendant; and (4) the events of October 22, 2012." [88] at 3. Specifically, the Government seeks to introduce the following testimony: (1) the CI identified a man known to him as "Luigi" as a cocaine broker who lived in Carpentersville, provided two phone numbers he used to communicate with Luigi, and gave a description of Luigi's car; (2) agents instructed the CI to make a series of telephone calls to Luigi to set up another cocaine transaction, and not to tell Luigi that the CI had been arrested by the DEA; and (3) the CI has previously supplied Luigi with cocaine (the Government will not elicit statements about the locations, quantities, or prices of such transactions). *Id.* at 3-4. The Government asserts that this testimony is "necessary in order for the jury to understand and evaluate the recorded telephone call, the subsequent sequence of unrecorded telephone calls (made in the presence of agents), and agents' actions on October 22, 2012, when they conducted surveillance of the defendant at multiple locations and ultimately approached the defendant at his restaurant." *Id.* at 4. In addition, the Government asserts that the Confrontation Clause would not be implicated by the admission of the proposed testimony because the Confrontation Clause does not bar out-of-court statements when they are not offered to prove the truth of the matter asserted.

The Court concludes that the Government is allowed to introduce the three categories of testimony described in their response, but that a limiting instruction must also be provided informing the jurors that they are not to consider the CI's statements as truth but only as an explanation of why the DEA's investigation proceeded as it did (or for any other permissible non-hearsay purpose that the Government identifies).

First, the Government plans to have a DEA agent testify that the CI identified "Luigi" (who turned out to be Defendant) as a cocaine broker and provided his address, telephone numbers, and a description of his car. The Court concludes that this testimony is not inadmissible hearsay because it is offered to explain why the DEA conducted surveillance on Defendant's house and approached Defendant on October 22, 2012. Without this testimony, there would be a gap in the trial narrative that could "substantially confuse" the jury. For instance, the jury would have no context for the recorded phone conversation between the CI and Defendant (which Defendant admits is admissible) or for the Government's decision to focus on Defendant's house on October 22, 2012. *Jones*, 635 F.3d at 1046; see also *United States v. Eberhart*, 434 F.3d 935, 940 & n.1 (7th Cir. 2006) (DEA agents' testimony that informant stated that his cocaine supplier was "E" was not hearsay where it was admitted to help the jury understand why agents asked the informant to call "E" and it "gave context to the recorded phone conversation that the jury heard"); *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004) (police officer's testimony concerning a conversation he had with another individual, in which the officer was told about a "black male with a bald head" who was dealing drugs from a residence which the police had under surveillance, was not offered to prove the truth of the matter asserted, but rather was "offered to explain why [the officer] approached [the defendant]" and therefore not hearsay).

Second, the Government seeks to introduce testimony from an agent that the CI stated that he previously supplied Luigi with cocaine. The Government has agreed not to elicit statements about the locations, quantities, or prices of any of these earlier drug transactions.[2]

---

[2] The Court accepts the Government's representation that on direct examination it will not elicit statements about the locations, quantities, or prices of prior drug transactions between the CI and Defendant. Of course, if Defendant's cross-examination attacks the credibility of the CI (or the agent's actions based on the CI's information), then the Government may be permitted on redirect to elicit additional testimony on the details of the prior transactions and the DEA's efforts to assess the reliability

7

The Court concludes that this proposed testimony is relevant to provide context to the agents' actions, including why the agents relied on the CI and why they instructed the CI to call Defendant. See *Eberhart*, 434 F.3d at 940 & n.1; see also *Taylor*, 569 F.3d at 749 (in prosecution for being a felon in possession of a firearm, district court did not err by admitting police officers' testimony referring to a witness's statement that she saw defendant take "a gun across the street," even though the witness was not called to testify, where the statement was offered to explain the officers' own actions in the course of their investigation, rather than to demonstrate that defendant possessed the gun and, given the other evidence of defendant's gun possession, his substantial rights were not affected); *United States v. Dodds*, 569 F.3d 336, 340-41 (7th Cir. 2009) (in prosecution for unlawful firearm possession, district court did not err by admitting police officer's testimony concerning conversation he had with unidentified witness, in which witness told officer that black man in black jacket and black cap was pointing gun at people two blocks away, where the statement was offered to explain why police proceeded to a particular intersection and focused their attention on defendant, who matched description they had been given); *James*, 487 F.3d at 523-34 (in prosecution for attempting to possess with intent to distribute more than five kilograms of cocaine, district court did not err in admitting FBI agent's testimony about what an informant had told him about the informant's prior drug dealings with defendant, where agent's testimony was admitted after defendant's attorneys stated that they pursue a defense theory that defendant was an innocent person who had been set up by the informant and district court issued limiting instruction that agent's testimony could be considered only for nonhearsay purpose of providing context for government's decision to work with informant and agent's testimony conformed to limiting instruction).

---

of the CI. If this scenario unfolds at trial, counsel should request a side bar to discuss the scope of permissible cross and/or redirect.

Third, the Government seeks to introduce agent testimony that the CI was instructed to make a series of telephone calls to Luigi to set up another cocaine transaction and to not tell Luigi that he had been arrested by the DEA. The Court concludes that the agent's instructions to the CI are not hearsay because "[a]n order * * * is not capable of being true or false, and thus it is not offered for the truth of any matter asserted." *United States v. Keane*, 522 F.2d 534, 558 (7th Cir. 1975); see also *United States v. White*, 639 F.3d 331, 337 (7th Cir. 2011) ("[A] command is not hearsay because it is not an assertion of fact."); *Carter*, 796 F.3d at 735 (police officer's trial testimony that he instructed informant to call defendant to request "teeners" and that informant did so was not hearsay and did not violate the Confrontation Clause in a prosecution for possessing between five and 15 grams of cocaine with intent to deliver, where the officer's testimony merely described verbal acts, his own instruction, and the informant's offer to buy, all of which the officer made and/or saw and heard himself). In addition, the agent's instructions provide context for the recorded telephone call between the CI and the Defendant on October 17, 2012 and will help avoid confusing the jury when the recording is played. See *United States v. Walker*, 673 F.3d 649, 657 (7th Cir. 2012) (recognizing that an informant's out-of-court statements are "admissible as nonhearsay when offered to make a defendant's recorded statements intelligible for the jury (that is, for context)").

While the Court concludes that the Government's proposed testimony is admissible, to reduce any risk of prejudice the Court will require a limiting instruction to be read to the jury before the testimony is introduced and at the close of trial. The instruction should inform jurors that they are not to consider the CI's statements as truth but only as an explanation of why the investigation proceeded as it did (or for any other relevant, nonhearsay purposes that the Government identifies). Cf. *James*, 487 F.3d at 524 (affirming district court limiting instruction

to jury "cautioning that any testimony regarding prior dealings between [the defendant] and [the informant] could be considered by the jurors only for purposes of providing context for the Government's decision to work with [the informant] and, if it should become an issue, [the informant's] credibility").

## B. Defendant's Position Paper as to the Suppression of Evidence

Also before the Court are the parties' position papers concerning how the Court's ruling [69] on Defendant's motion to suppress will be implemented during the course of the trial. See [84], [88], [90]. Both parties recognize that testimony concerning the Government's seizure of $36,000 from Defendant's garage on October 22, 2012 should be barred based on the Court's earlier ruling [69]. They disagree, however, over whether the following categories of evidence should be barred as fruits of the poisonous tree: (1) Defendant's incriminating statements to DEA agents on December 5, 2012 concerning prior drug transactions with the CI and Alfonso LSU; (2) the Seizure Notice, with any reference to the "seizure" of money redacted; and (3) Defendant's statements to DEA agents on December 5, 2012 concerning the administrative forfeiture proceeding.[3]

In its order on Defendant's motion to suppress, the Court already determined that the first category of evidence that Defendant seeks to exclude—Defendant's December 5 incriminating statements about prior drug transactions—should not be suppressed because Defendant made those statements voluntarily and after any taint from the illegal October 22 seizure would have

---

[3] See [88] at 7 (Government's arguments that "testimony regarding the notice of administrative forfeiture of funds from the defendant * * * is not inconsistent with the Court's" suppression ruling and that the Government "will redact the [forfeiture notice] to omit any reference to the 'seizure' of the money"); [84] at 3 (Defendant's argument that "the above or any other discussions based on the illegal seizure of money," including that "the agents also discussed alleged drug transactions with [Defendant]" on December 5, 2012, has "little probative value and would likely only serve to confuse the jury"); *id.* at 4 (Defendant's request that the Court hold that the exclusion of evidence of the seizure of $36,000 from Defendant "extends to alleged conversations which [Defendant] had with agents in the months thereafter").

been dissipated. See [69] at 14-17. Defendant's position paper does not identify any error in the Court's suppression ruling or any case law that would support applying the fruits of the poisonous tree doctrine under the facts here. Therefore, the Court stands by the reasoning of its prior decision. Cf. *United States v. Budd*, 549 F.3d 1140, 144 (7th Cir. 2008) (in prosecution for child pornography, even if police officer's seizure of defendant's computer was unreasonable for purposes of the Fourth Amendment, defendant's subsequent telephone calls to police station and statements made to police were not derivative of the seizure of his computer, and thus defendant's statements were not excludable as fruit of the poisonous tree, where defendant called police to clarify some of his previous statements, volunteered that he had "pretty graphic" files on his computer, and agreed to come down for questioning).

The Court focuses its analysis here on the two remaining disputed categories of evidence: (1) the Seizure Notice itself and (2) Defendant's conversation with DEA agents on December 5, 2012 about the possible forfeiture of the money from his garage. The Government contends that this evidence is "highly probative" of the reason for Defendant's December 5, 2012 encounter with DEA agents and the circumstances of Defendant's statements to agents on that date. [88] at 6. The Government points out that Pattern Jury Instruction 3.09, concerning a "Statement by Defendant," instructs the jury that it "must decide whether [the defendant] made the statement and, if so, how much weight to give to the statement." Seventh Circuit Criminal Pattern Jury Instruction 3.09. In making these determinations, the jury is instructed to "consider all of the evidence, including the defendant's personal characteristics and *circumstances under which the statement may have been made*." *Id.* (emphasis added; citing *Crane v. Kentucky*, 476 U.S. 683, 688 (1986)). In *Crane*, the Supreme Court recognized that even when a defendant's confession has "been found to be voluntary," the confession may still be "insufficiently corroborated or

11

otherwise . . . unworthy of belief." 479 U.S. at 689. "[T]he manner in which a confession was secured will often be germane to its probative weight" and "a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility." *Id.* at 688-89.

In this case, the Government wants to introduce the Seizure Notice and testimony concerning Defendant's December 5 conversation with agents about the forfeiture to establish that Defendant invited DEA agents to his house on that date and had a cooperative conversation with the agents about a civil administrative matter. The Court agrees with the Government that some testimony about the conversation between Defendant and the agents has probative value because it provides context for the admissible and incriminating statements to which the agents will testify about Defendant's prior drug transactions. See Seventh Circuit Criminal Pattern Jury Instruction 3.09; *Crane*, 476 U.S. at 688-89. At a minimum, the agents will be permitted to testify that they were present at Defendant's home at his invitation, the general subject matter that Defendant wanted to discuss, and the general tenor of the conversation on that matter. The remaining question is the extent to which either the Fourth Amendment or the Federal Rules of Evidence constrain the scope of the agents' testimony concerning the details of the conversation.

As an initial matter, regardless of their relevance, the Seizure Notice and Defendant's statements about the potential forfeiture may be subject to preclusion if they are considered fruits of the illegal seizure of the $36,000 from Defendant's garage. "[T]he indirect fruits of an illegal search or arrest should be suppressed" when: (1) as a threshold matter, "the challenged evidence is in some sense the product of illegal governmental activity"; and 2) the challenged evidence "bear[s] a sufficiently close relationship to the underlying illegality." *New York v. Harris*, 495 U.S. 14, 19 (1990). "Evidence may be 'sufficiently distinguishable to be purged of the primary

taint' when 'the causal connection between [the] illegal conduct and the procurement of [the] evidence is so attenuated as to dissipate the taint' of the illegal action." *United States v. Fields*, 371 F.3d 910, 915 (7th Cir. 2004) (quoting *United States v. Green,* 111 F.3d 515, 521 (7th Cir. 1997)); see also *Carter*, 573 F.3d at 422-23. "When determining whether the causal chain between the illegal police action and the discovery of the disputed evidence is sufficiently attenuated to permit introduction of the evidence, a court examines three factors: '(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.'" *United States v. Ienco*, 182 F.3d 517, 526 (7th Cir. 1999); see also *United States v. Conrad*, 673 F.3d 728, 733 (7th Cir. 2012). In addition, even if application of the exclusionary rule does not require it, the Court "may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

In this case, the Court concludes that the Seizure Notice and Defendant's December 5 conversation with agents about the Notice are "in some sense the product of illegal government activity." *Harris*, 495 U.S. at 19. Defendant received the Seizure Notice solely because the DEA had seized money from his garage in violation of the Fourth Amendment and Defendant initiated the December 5 meeting to discuss how to address the Seizure Notice.

The next question, then, is whether the Seizure Notice and Defendant's conversation with agents about the Notice were sufficiently attenuated from the illegal seizure of $36,000 to dissipate the taint of that seizure. In its earlier suppression ruling, the Court concluded that "any taint associated with the October 22, 2012 interview" (during which Defendant told agents there was money in his garage and consented to a search) had dissipated prior to Defendant's December 5, 2012 incriminating statements. The Court emphasized that five weeks had passed

between the two interviews and that Defendant invited DEA agents to his home for the second interview. See [69] at 16. The Court concludes that the same attenuation analysis is applicable to Defendant's December 5, 2012 statements about the forfeiture and, therefore, the exclusionary rule does not apply to bar the introduction of such statements. The Seizure Notice, however, presents a closer case. Defendant did not ask the Government to send him a Seizure Notice and Defendant would never has received the notice but for the Government's illegal seizure of money from his garage.

Ultimately, the Court concludes that it is unnecessary to resolve whether the exclusionary rule applies to the Seizure Notice. Instead, the Court concludes that the probative value of both the Seizure Notice and Defendant's December 5, 2012 conversation with agents about the potential forfeiture of the money seized from his garage is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. See Fed. R. Evid. 403. Although the circumstances surrounding Defendant's December 5 incriminating statements are relevant to the jury's evaluation of whether Defendant made the incriminating statements, testimony about the Seizure Notice itself and Defendant's questions and statements about the forfeiture issue add very little to this evaluation. The Court's understanding is that the Government wants to introduce the Seizure Notice and the December 5 conversation concerning the forfeiture to establish that Defendant invited agents to his house to discuss a civil administrative matter and that Defendant and the agents had a cooperative conversation about that matter. As noted above, stated in these general terms, testimony of this nature provides useful context for the jury. Thus, the Government can introduce those basic facts through the testimony of the DEA agents who met with Defendant on December 5, but without introducing the actual Seizure Notice or delving into the substance of it.

However, the Government has not established that it has a need to tell the jury any details about Defendant's questions or the agents' answers about the Seizure Notice or any related forfeiture proceedings. Introducing the Seizure Notice (even with references to the seized money redacted) and the substance of Defendant's conversation with agents about the forfeiture could confuse the jury and the issues and create a substantial risk of unfair prejudice by suggesting that Defendant engaged in some type of misconduct that resulted in a forfeiture action being initiated against him. The Court concludes that this risk, considered in light of the Court's prior ruling that the original seizure of funds was illegal, substantially outweighs the probative value of the Forfeiture Notice and of Defendant's December 5 discussion of the forfeiture proceeding with agents.

**IV. Conclusion**

For the reasons explained above, the Court denies Defendant's motion to bar hearsay evidence [82] but directs the parties, by June 3, 2016, to submit a proposed limiting instruction to the Court's proposed order e-mail box, [Proposed_Order_Dow@ilnd.uscourts.gov](mailto:Proposed_Order_Dow@ilnd.uscourts.gov). In regard to Defendant's position paper concerning the suppression of evidence [84], the Court concludes that: (1) the DEA Notice of Seizure will be excluded from trial; (2) the Government's testimony concerning the December 5, 2012 conversation between Defendant and DEA agents about the forfeiture shall be limited to that necessary to establish that Defendant invited agents to his home to discuss a civil administrative matter and that Defendant and agents engaged in a cooperative discussion of that matter; and (3) testimony concerning Defendant's incriminating statements to DEA agents on December 5, 2012 concerning prior drug transactions will be admissible at trial.

Dated: May 31, 2016

_____
Robert M. Dow, Jr.
United States District Judge